UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SHATASIA C. BUCKNER,                 :

               Plaintiff,        :   CIVIL ACTION NO. 3:24-1094

v.                                   :        (JUDGE MANNION)

COMMONWEALTH OF                      :
PENNSYLVANIA, CHILDREN IN
YOUTH SERVICES, *et al*,             :

              Defendants. :

## MEMORANDUM

Before the Court is a report and recommendation of Magistrate Judge Susan E. Schwab (the "Report") (Doc. 10) in which she recommends that Plaintiff's, Shatasia Buckner, complaint be dismissed. Objections to the report and recommendation were due by January 24, 2025, and to date, no objections have been filed.

In considering whether to adopt a report and recommendation when no objections have been filed, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (explaining that judges should review

- 1 -

dispositive legal issues raised by the report for clear error). Following an independent review of the record and upon a careful review of the report and recommendation, the Court is satisfied that the Report contains no clear error. Plaintiff claimed that the Defendants aided the parental kidnapping of her children and otherwise violated her rights. However, after a review of the complaint, this Court concurs with Judge Schwab's assessment that the Complaint fails to state a claim upon which relief can be granted.

Plaintiff commenced this action *pro se* by filing a form complaint in the United States District Court for the Southern District of New York ("SDNY") on March 15, 2024, (Doc. 1), asserting that her Fourteenth Amendment rights were violated. The operative complaint identified four defendants: (1) New York Administration for "Childrens" Services; (2) Suzanne Miles-Gustave, Esq.; (3) Commonwealth of Pennsylvania "Children in Youth Services" ("CYS");[1] and (4) Hanover Area School District ("School District"). (Doc. 1). The SDNY held that venue for Plaintiff's

---

[1] Judge Schwab notes that it is unclear whether Plaintiff intends to name the Commonwealth of Pennsylvania, Department of Human Services' Office of Children, Youth & Families or the Luzerne County Office of Children & Youth. Plaintiff names the "Commonwealth of Pennsylvania Children in Youth" in the caption, but she states that the defendant is the "Pennsylvania Luzerne County Children in Youth." (Doc. 1, p. 10).

- 2 -

claims against CYS and the School District does not lie within the SDNY under 28 U.S.C. §1391 and severed the claims against those defendants, transferring them to this Court pursuant to 28 U.S.C. §1406(a).

## 1. Background

The factual and procedural background to this case is provided in detail in the Report but will be summarized herein. In essence, Plaintiff asserts that she was physically assaulted by her children's abductors, Chanel Buckner ("Chanel") and Russell Luke-King ("Luke-King") on November 27, 2022. (Doc. 1, pp. 10-11). After the alleged assault, Plaintiff began taking steps to remove herself and her children from Luke-King, the estranged father, with the assistance of the Kings County District Attorney's Office in New York. (*Id.*). In February of 2023, Chanel and Luke-King allegedly took Plaintiff's children to Luzerne County, Pennsylvania. (*Id.*). At some point, Chanel filed a restraining order against Plaintiff in the Luzerne County Court of Common Pleas and, according to Plaintiff, Judge Salavantis of the Luzerne County Court of Common Pleas has been "taking steps to conceal their wrong doing," and the Luzerne County Court has an "abusive hold on [Plaintiff's] life" due to the custody orders. (*Id.*).

Plaintiff sent a cease-and-desist letter to the Defendants regarding "a registration submitted in this matter of Plaintiff's children lacking input or

consent from the Plaintiff." (*Id.*).² Plaintiff alleges that the School District was negligent in "failing to prevent or remedy, and/or remove Plaintif[f]'s children from the program as requested." (*Id.*, p. 11). She further alleges that the School District was notified of the parental kidnapping and registration in the School District without her consent on a conference call that occurred on August 19, 2023, and that the School District failed to prevent or remedy the "ongoing kidnapping." (*Id.*).

Further, Plaintiff alleges that the School District denied her information regarding her child's whereabouts, despite a severe concern for her child's peanut allergy. (*Id.*). Plaintiff was allegedly denied all information about her children, including their whereabouts, attendance, and academic concerns. (*Id.*). Plaintiff further alleges that defendants "violated [her] parental, civil, and constitutional rights[,] including federal education code." (*Id.*). Plaintiff also alleges that one of her kids has a disability and missed his treatments three times a week which include "the unauthorized use of child[']s New York State medical insurance and unauthorized [doctors] visits, including to obtain a physical for a football

---

² Plaintiff does not specify what the registration was for. As the next paragraph is about the School District, Judge Schwab, and this Court concurs, assumes the registration is for the Hanover Area School District.

program at [the] Mini Hawks football team in Luzerne County." (*Id.*, pp. 11-12).

In the Complaint, Plaintiff lists five causes of action:[3] (1) improper service; (2) Family Educational Rights and Privacy Act ("FERPA") under 20 U.S.C. §1232g and 34 C.F.R. Part 99; (3) "[New] York Consolidated Laws, Education Law—EDN §1606;" (4) New York Education Law §3214; and (5) New York Family Court Act under §§249, 254, 261, 262, 735, 741. (Doc. 1, pp. 12-23). Immediately following her listing of the causes of action, Plaintiff states that "Plaintiff repeats random and alleges each and every allegation in all of the preceding paragraphs." (*Id.*, pp. 12-15, 21). Although Plaintiff quotes sections of statutes for each cause of action, in general, she fails to explain how the defendants allegedly violated those statutes. (*Id.*).

Plaintiff alleges that defendants violated her Fourteenth Amendment rights "by entering unconstitutional orders consisting of no Service of Process, breech [sic] in confidentiality, breech [sic] in Plaintiff[']s personal information including Plaintiff's children." (*Id.*, p. 12). Plaintiff does not,

---

[3] Judge Schwab notes, and this Court concurs, that listing laws is not tantamount to stating causes of action. However, Plaintiff labeled each section as a cause of action and the Court will refer to them as such.

however, allege any further facts as to how this purported violation occurred. Rather, she merely quotes the Pennsylvania Rules of Service. (*Id.*, pp. 12-13).

Plaintiff further alleges that the Defendants were grossly negligent in "failing to prevent/or remedy Parental Kidnapping under PKPA [the Parental Kidnapping Prevention Act] despite Plaintiff's numerous NYPD police reports." (*Id.*, p. 21). She claims the Defendants continue to "impose substantial harm and neglect to the extent it has caused a serious [sic] of unlawful, unsolicited, unwanted incidents onto both Plaintiff and [her] children who also have been subjected[] to racial discrimination, [harassment], physical[] and emotional abuse." (*Id.*). Plaintiff alleges that the School District is "seeking to take action in response to my son[']s outcry for help being withheld against Plaintiff's will and [consent] under unconstitutional orders out of the Commonwealth of Pennsylvania Luzerne County Family Court." (*Id.*). Plaintiff does not allege any additional facts as to how this purported violation occurred. Rather, she quotes sections of the New York Family Court Act regarding a child's right to counsel. (*Id.*, pp. 21-23).

Plaintiff defines her injuries as follows: she "suffered a substantial amount of pain and suffering[,] anxiety[,] physical [and] emotional abuse,

- 6 -

trauma[,] economic damages, [bereavement] and therapy to cope with post[-]traumatic stress, discrimination[,] [and] breech [sic] in confidentiality." (*Id.*, p. 6). She further alleges "emotional distress, physical psychological trauma[,] . . . immense stress, difficulty eating, insomnia, loss of quality of life, wrongfully arrest[ed], economic harm[,] . . . [e]xploitation, [and] retaliation for opposing unlawful practices." (*Id.*, p. 12). Furthermore, Plaintiff alleges damages, including: "deprivation in quality of life, natural human rights, constitutional rights, civil rights, and parental rights as the court deems just and proper." (*Id.*, p. 23). As relief, she seeks the immediate return of her children, punitive damages (*id.* at 6), and reasonable attorney's fees under 18 U.S.C. §1595(a). (*Id.*, p. 23).[4]

## 2. Discussion

As correctly noted in the Report, Federal Rule of Civil Procedure 8 requires, among other things, that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint fails to include such a statement.

---

[4] Judge Schwab notes that 18 U.S.C. §1595(a) allows individuals to recover attorney's fees for a civil violation but Plaintiff is not represented by counsel, pursuing this action *pro se*. Furthermore, §1595(a) provides a civil remedy under the Trafficking Victims Protection Act ("TVPA") but Plaintiff neither specifically raises a claim under TVPA nor alleges facts that would support a claim under TVPA.

Even with a liberal construction (as afforded to a *pro se* litigant), the Complaint still remains unclear as to what exactly each defendant did or failed to do. The complaint fails to provide fair notice of the grounds upon which Plaintiff's claims rest. Moreover, to the extent that Plaintiff is proceeding under FERPA (a listed cause of action in her Complaint), FERPA does not create a private right of action for use in civil suits. *Gonzaga University v. Doe*, 536 U.S. 273, 287 (2002). All that remains, then, are Plaintiff's claims based on violations of her Fourteenth Amendment rights which may be properly brought pursuant to §1983. *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). However, Plaintiff's §1983 claims against the defendants fail to state a claim upon which relief can be granted. Moreover, if Plaintiff intended to name the Department of Human Services' Office of Children, Youth, and Families ("DHS"), DHS is entitled to Eleventh Amendment Immunity. Each of the §1983 claims will be addressed below.

### a. Defendant Hanover Area School District

"A school district is a municipality for the purposes of a §1983 claim." *Rivera v. Leb. Sch. Dist.*, 825 F. Supp. 2d 561, 571 (M.D. Pa. 2011) (citing 53 Pa. C.S.A. § 7101 (defining "municipality" to include school districts); *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (analyzing a school

district's liability as a municipality). A municipality, such as the Hanover Area School District, cannot be held liable under 42 U.S.C. §1983 for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Rather, "under §1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)). As correctly noted by Judge Schwab, "a §1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). One way for a plaintiff to present a claim against a municipality is to allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.* Another way for a plaintiff to present a claim against a municipality is to allege that her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

Here, Plaintiff has not alleged any facts from which it can reasonably be inferred that the School District had a policy or custom that violated her rights. In fact, Plaintiff alleges nothing in this regard. And as to whether Plaintiff presented a claim alleging that her injuries "were caused by a

failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice'" *Forrest*, 930 F.3d at 105, that claim may be based on a failure or inadequacy of training, supervision, or discipline of its officers. *Id.* Yet, here again, Plaintiff has not alleged any facts from which it can reasonably be inferred that a failure or inadequacy of training, supervision, or discipline by the School District caused a violation of her rights.

### b. Defendant "Children in Youth Services"

In her Complaint, Plaintiff brings a §1983 claim against "Children in Youth." (Doc. 1, p. 10). It is unclear whether Plaintiff intended to name the Luzerne County Office of Children & Youth ("CYS") or the Commonwealth of Pennsylvania, Department of Human Services' Office of Children, Youth, & Families ("DHS"). Nevertheless, each office will be addressed individually below.

"Pennsylvania county offices of children and youth services are treated as municipalities for purposes of *Monell*." *Hatfield v. Berube*, 714 Fed. Appx. 99, 102 n. 1 (3d Cir. 2017) (citing *Mulholland v. Gov't Cnty. Of Berks*, 706 F.3d 227, 237 (3d Cir. 2013)). Since CYS is considered a municipality, the Court applies the same *Monell* framework as applied above to the School District. Similar to the claims against School District, Plaintiff has yet again not alleged any facts from which it can reasonably

be inferred that a policy or custom of CYS violated her rights. In fact, Plaintiff alleges nothing in this regard. Plaintiff further has not alleged facts from which it can reasonably be inferred that a failure or inadequacy of training, supervision, or discipline by CYS caused a violation of her rights. Again, Plaintiff alleges nothing in this regard.

Alternatively, Plaintiff may have intended to name DHS as a defendant. But the Eleventh Amendment bars any §1983 claim against DHS. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.

Judge Schwab correctly notes that although the Eleventh Amendment's text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "'to stand not so much for what it says, but for the presupposition . . . which it confirms.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)). That presupposition is that each state is a sovereign entity in our federal

system and that it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.* In the absence of consent, a suit in federal court against the state or one of its agencies is barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (*per curiam*). A state, however, may waive its Eleventh Amendment immunity by consenting to suit, and Congress may abrogate states' Eleventh Amendment immunity when it unequivocally intends to do so and it acts pursuant to a valid grant of constitutional authority. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

Here, the DHS is a state agency. *See* 71 P.S. §61(a). The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity, *see* 42 P.C.S.A. §8521(b), and 42 U.S.C. §1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Accordingly, Plaintiff's claim against the DHS is barred by the Eleventh Amendment.

### c. Leave to Amend

Before dismissing a complaint under a screening provision, the Court must grant the plaintiff leave to amend her complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293

F.3d 103, 114 (3d Cir. 2002). "Under Rule 15(a). futility of amendment is a sufficient basis to deny leave to amend." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (quoting *In re Merck & Co. Sec., Derivative, & Erisa Litig.*, 493 F.3d 393, 400 (3d Cir. 2007)).

After screening the complaint, Judge Schwab concluded that it would be futile for Plaintiff to file an amended complaint as to the FERPA claim because FERPA does not provide a for a private cause of action. The Court agrees. Judge Schwab further concluded that amendment would also be futile as to any claim against DHS given its Eleventh Amendment immunity. The Court also agrees.

As to any §1983 claims, Judge Schwab granted Plaintiff an opportunity to file an amended complaint, (Doc. 9), outlining the pleading standards with which Plaintiff must comply in filing an amended complaint. Plaintiff has not, however, filed an amended complaint. Judge Schwab recommends, and this Court agrees, that granting Plaintiff further leave to amend would be futile.

### 3. Discussion

For the foregoing reasons, the Court will adopt Judge Schwab's Report and Recommendation (Doc. 10) in its entirety. An appropriate order will follow.

MALACHY E. MANNION
United States District Judge

Dated: February 19, 2025
24-1094-01